UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| TODD ANDRA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MOBILEONE, LLC, an Arizona limited liability company,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S SHORT FORM DISCOVERY MOTION RE: DISCOVERY REGARDING TODD'S PERFORMANCE (DOC. NO. 52)**<br><br>Case No. 2:23-cv-00188<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Daphne A. Oberg |

In this employment case, Plaintiff Todd Andra moves to compel Defendant MobileOne, LLC to respond to Mr. Andra's Interrogatories 11 and 12 and Requests for Production ("RFPs") 12, 13, 21, 22, and 31.[1] These requests seek various performance metrics for stores MobileOne acquired from The Mobile Source, LLC ("TMS"), including chargeback amounts, monthly gross profits, budgeted hours, store traffic, and customer experience scores. MobileOne argues the requests are irrelevant, unduly burdensome, and not proportional to the needs of the case.[2] Because the requests are relevant and proportional to the needs of the case, the motion is granted.[3]

---

[1] (Pl.'s Short Form Disc. Mot. Re: Disc. Regarding Todd's Performance ("Mot."), Doc. No. 52.)

[2] (See Def. MobileOne's Resp. to Pl.'s Short Form Mot. to Compel Disc. Regarding Todd's Performance ("Opp'n"), Doc. No. 59.)

[3] This motion is addressed on the briefs, as no hearing is necessary. See DUCivR 37-1(b)(5)(B).

1

## BACKGROUND

Mr. Andra brought this case against his former employer, MobileOne, asserting breach of contract and related claims arising from his termination.[4] In July 2022, MobileOne entered into an agreement with TMS to purchase thirty-three retail T-Mobile stores operated by TMS.[5] Mr. Andra supervised sales companywide at TMS, and transitioned his employment to MobileOne as part of the acquisition.[6]

MobileOne terminated Mr. Andra in February 2023, approximately seven months after the TMS acquisition.[7] Mr. Andra alleges MobileOne imposed changes in pay structure between July 2022 and February 2023, which led to many employees resigning, in turn resulting in a substantial drop in sales at former TMS stores.[8] Mr. Andra contends MobileOne fabricated "cause" for his termination to avoid paying severance, by claiming the drop in sales was a result of his incompetence rather than MobileOne's policies.[9] MobileOne, on the other hand, contends it had proper cause to terminate Mr. Andra based on "inappropriate behavior, creation of a hostile work environment, and undermining MobileOne's management."[10]

---

[4] (*See generally* Compl., Doc. No. 2.)

[5] (*Id.* ¶¶ 8, 26–27.)

[6] (*See id.* ¶¶ 24, 29.)

[7] (*See* Pl.'s Short Form Disc. Mot. Re: Commc'ns About The Mobile Source, LLC, Doc. No. 44 at 2.)

[8] (*See* Compl. ¶¶ 79–86, Doc. No. 2.)

[9] (*See id.* ¶¶ 90–92, 96.)

[10] (Opp'n 2, Doc. No. 59.)

Interrogatory 11 states: "for each of the [TMS] Stores and the MobileOne Stores, set forth each store's monthly chargeback amounts from July 1, 2022, through the present separated by store location."[11]  RFP 12 requests documents evidencing these monthly chargeback amounts.[12]  Interrogatory 12 requests monthly gross profits for each store from the same period, and RFP 13 requests documents evidencing monthly gross profits.[13]

RFP 21 seeks "documents showing the budgeted hours for [TMS] Stores July 1, 2022, through the present separated by store location."[14]  RFP 22 seeks documents showing customer experience scores for each TMS store for the same period.[15]  RFP 31 seeks "documents showing the ShopperTrak numbers or store traffic count from July 1, 2022, through the present separated by store location and showing month-end totals."[16]

MobileOne objected to all these requests as irrelevant and overbroad, and declined to respond.[17]

---

[11] (Ex. 1 to Mot., Pl.'s First Set of Disc. Reqs. 7, Doc. No. 52-1.)

[12] (*Id.* at 9.)

[13] (*Id.* at 7, 9.)

[14] (*Id.* at 10.)

[15] (*Id.*)

[16] (*Id.* at 11.)

[17] (*See* Ex. 2 to Mot., Def. MobileOne, LLC's Resp. to Pl. Todd Andra's First Set of Disc. Reqs. 8–9, 18–19, 23, 26, Doc. No. 52-2.)

**LEGAL STANDARDS**

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[18] Proportionality considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[19]

**ANALYSIS**

Mr. Andra argues the requested store performance metrics are relevant to whether MobileOne had valid cause to terminate him.[20] Mr. Andra argues the timeframe of the requests is relevant because a comparison of these metrics before and after his termination will provide insight into whether store performance was a result of his management or other factors.[21]

MobileOne argues the requested performance metrics are irrelevant because Mr. Andra was terminated for inappropriate behavior, creating a hostile work environment, and undermining MobileOne's management—not poor performance.[22] MobileOne also contends store performance was not a metric by which MobileOne evaluated Mr.

---

[18] Fed. R. Civ. P. 26(b)(1).

[19] *Id.*

[20] (*See* Mot., Doc. No. 52 at 2–3.)

[21] (*See id.* at 3.)

[22] (*See* Opp'n 2, Doc. No. 59.)

Andra's performance.[23]  MobileOne further argues the specific metrics requested by Mr. Andra are problematic for various reasons.  First, MobileOne asserts it has "hundreds of thousands of lines of chargebacks each month," and it does not know which chargebacks Mr. Andra seeks.[24]  MobileOne suggests responding would be burdensome because it would have to "manually" review chargebacks and separate them by stores, which MobileOne contends is "infeasible."[25]  Next, MobileOne asserts the request for "gross monthly profits" is vague because it is "unclear whether the term is burdened by overhead."[26]  MobileOne then argues it cannot produce traffic counts and customer experience scores going back to July 2022 because it only retains data for thirteen months.[27]  Finally, MobileOne argues it changed the metrics it uses for customer satisfaction eight months ago, so this recent data would not be useful for comparison.[28]

The requests at issue are relevant and proportional to the needs of the case.  As explained above, Mr. Andra alleges MobileOne terminated him without valid cause, based on poor financial performance of TMS stores resulting from MobileOne policies rather than Mr. Andra's management.  Thus, store performance metrics are relevant to Mr. Andra's breach-of-contract claim.  The fact that MobileOne disputes the reasons for

---

[23] (*See id.*)

[24] (*Id.* at 2–3.)

[25] (*Id.* at 3.)

[26] (*Id.*)

[27] (*Id.*)

[28] (*Id.*)

Mr. Andra's termination does not render these discovery requests irrelevant. Indeed, it further highlights the relevance of the requests, where they pertain to a central disputed issue in this case. Additionally, the requested timeframe is relevant because a comparison of store metrics from before and after Mr. Andra's termination bears on whether store performance resulted from Mr. Andra's management or other factors.

MobileOne has not shown the burden or expense of this discovery outweighs its likely benefit. As an initial matter, MobileOne did not object on grounds of proportionality or undue burden in its responses to these requests, meaning such objections are waived.[29] Even if not waived, MobileOne fails to adequately support its burden argument. MobileOne does not provide any estimate of the time or expense required to respond to the requests. Further, MobileOne's claim that it would have to "manually" compile hundreds of thousands of lines of chargebacks lacks evidentiary support and seems improbable. Presumably, an electronics company of MobileOne's size maintains computerized records which could be produced without a line-by-line manual compilation. Additionally, the time period of the requests—covering approximately two years of data—is proportional to the needs of the case. MobileOne offers no reason why the two-year timeframe would be unduly burdensome.

MobileOne's remaining arguments do not provide any reason to excuse it from responding to the requests. If MobileOne does not possess data from some portion of

---

[29] *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *Fifth Third Bank v. KCII Insure Servs., LLC*, No. 11-CV-2101, 2011 U.S. Dist. LEXIS 136160, at *4 (D. Kan. Nov. 28, 2011) (unpublished) (noting the same waiver standard applies to Rule 34 requests for production).

the requested time period, it may state that in its response. If it is unclear whether the request for monthly gross profits includes overhead, MobileOne should confer with Mr. Andra to obtain clarification. And the issue of whether recent customer scores are a useful comparator goes to admissibility—not whether this information is discoverable.

In sum, Mr. Andra has demonstrated the requested store performance metrics are relevant and proportional to the needs of the case, and MobileOne's objections are overruled.

## CONCLUSION

Because Mr. Andra's requests for store performance metrics are relevant and proportional to the needs of the case, Mr. Andra's motion[30] is granted. Within fourteen days, MobileOne must answer Interrogatories 11 and 12 and produce all documents responsive to RFPs 12, 13, 21, 22, and 31.

DATED this 20th day of August, 2024.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[30] (Doc. No. 52.)