UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| TODD ANDRA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MOBILEONE, LLC, an Arizona limited liability company,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S SHORT FORM DISCOVERY MOTION RE: EMPLOYEE RESIGNATIONS AND TERMINATIONS (DOC. NO. 47)**<br><br>Case No. 2:23-cv-00188<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Daphne A. Oberg |

In this employment case, Plaintiff Todd Andra moves to compel Defendant MobileOne, LLC to respond to Mr. Andra's Interrogatories 8, 9, and 13 and Requests for Production ("RFPs") 11 and 14.[1] These requests seek information and documents relating to the termination and resignation of employees and regional managers. MobileOne argues the requests are overbroad, irrelevant, and not proportional to the needs of the case.[2] The court ordered supplemental briefing,[3] which both parties

---

[1] (Pl.'s Short Form Disc. Mot. Re: Emp. Resignations and Terminations ("Mot."), Doc. No. 47.)

[2] (*See* Def. MobileOne's Resp. to Pl.'s Short Form Mot. No. 4 to Compel Disc. Regarding Emp. Resignations and Terminations ("Opp'n"), Doc. No. 57.)

[3] (*See* Docket Text Order for Suppl. Briefing, Doc. No. 63.)

1

submitted.[4]  Because Mr. Andra's requests are relevant and proportional to the needs of the case, Mr. Andra's motion is granted.[5]

## BACKGROUND

Mr. Andra brought this case against his former employer, MobileOne, asserting breach of contract and related claims arising from his termination.[6]  In July 2022, MobileOne entered into an agreement with The Mobile Source, LLC ("TMS") to purchase thirty-three retail T-Mobile stores operated by TMS.[7]  Mr. Andra supervised sales companywide at TMS, and transitioned his employment to MobileOne as part of the acquisition.[8]  According to MobileOne, 228 other TMS employees also transitioned to MobileOne.[9]

MobileOne terminated Mr. Andra in February 2023, approximately seven months after the TMS acquisition.[10]  Mr. Andra alleges MobileOne imposed changes in pay structure between July 2022 and February 2023, which led to many employees

---

[4] (Pl.'s Suppl. Br. on Short Form Disc. Mot. Re: Emp. Resignations and Terminations ("Pl.'s Suppl. Br."), Doc. No. 64; Def. MobileOne's Suppl. Br. on Pl.'s Short Form Disc. Mot. to Compel Disc. Re: Emp. Resignations and Terminations (Def.'s Suppl. Br."), Doc. No. 65.)

[5] This motion is addressed on the briefs, as no hearing is necessary.  *See* DUCivR 37-1(b)(5)(B).

[6] (*See generally* Compl., Doc. No. 2.)

[7] (*Id.* ¶¶ 8, 26–27.)

[8] (*See id.* ¶¶ 24, 29.)

[9] (*See* Def. MobileOne's Resp. to Pl.'s Short Form Mot. to Compel Disc. Related to The Mobile Source 2, Doc. No. 49.)

[10] (*See* Pl.'s Short Form Disc. Mot. Re: Commc'ns About The Mobile Source, LLC, Doc. No. 44 at 2.)

2

resigning, in turn resulting in a substantial drop in sales at former TMS stores.[11]  Mr. Andra contends MobileOne fabricated "cause" for his termination to avoid paying severance, by claiming the drop in sales was a result of his incompetence rather than MobileOne's policies.[12]  MobileOne, on the other hand, contends it had proper cause to terminate Mr. Andra based on "inappropriate behavior, creation of a hostile work environment, and undermining MobileOne's management."[13]

With regard to employees, in Interrogatory 8, Mr. Andra asks MobileOne to identify "any [MobileOne] employees who worked in [TMS] Stores that ha[ve] resigned their employment, and provide the date of such resignation, separated by store location."[14]  In Interrogatory 9, Mr. Andra asks MobileOne to identify "any [MobileOne] employees who worked in [TMS] Stores that [MobileOne] ha[s] terminated, and provide the date of and reason for such termination, separated by store location."[15]  And in RFP 11, Mr. Andra requests documents "referring to or relating to" these employee terminations.[16]

With regard to managers, in Interrogatory 13, Mr. Andra asks MobileOne to identify "any [MobileOne] regional managers that have resigned or been terminated, and provide the date of the resignation or termination, and any reason given for the

---

[11] (*See* Compl. ¶¶ 79–86, Doc. No. 2.)

[12] (*See id.* ¶¶ 90–92, 96.)

[13] (Opp'n 2, Doc. No. 57.)

[14] (Ex. 1 to Mot., Pl.'s First Set of Disc. Reqs. 6, Doc. No. 47-1.)

[15] (*Id.* at 7.)

[16] (*Id.* at 9.)

resignation or termination, separated by store location."[17]  And in RFP 14, Mr. Andra requests documents "referring to or relating to" these resignations and terminations of regional managers.[18]

MobileOne objected to all these discovery requests as irrelevant, overbroad, and not proportional to the needs of the case, and declined to respond.[19]

## LEGAL STANDARDS

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[20]  Proportionality considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[21]

## ANALYSIS

Mr. Andra argues employee terminations and resignations are relevant to whether MobileOne had valid "cause" to terminate him.[22]  First, Mr. Andra argues

---

[17] (*Id.* at 7.)

[18] (*Id.* at 9.)

[19] (Ex. 2 to Mot., Def. MobileOne, LLC's Resp. to Pl. Todd Andra's First Set of Disc. Reqs. 7, 9, 18–20, Doc. No. 47-2.)

[20] Fed. R. Civ. P. 26(b)(1).

[21] *Id.*

[22] (*See* Mot., Doc. No. 47 at 1–2.)

employee resignations are relevant to his theory that a change in compensation structure caused employees to resign, leading to a drop in sales for which Mr. Andra was unfairly blamed.[23]  Mr. Andra argues employee terminations are relevant because information obtained in discovery suggests some employees were terminated due to downsizing pressure from T-Mobile, further contributing to poor financial performance at his stores.[24]  Mr. Andra also contends a comparison of resignation and termination rates before and after his termination is relevant to determine whether employee departures were caused by his allegedly poor management or other factors.[25]

With regard to managers, Mr. Andra argues regional manager resignations and terminations are relevant under a comparative discipline theory, to show whether similarly-situated employees who exhibited similar behavior to Mr. Andra were treated differently.[26]  He contends regional manager resignations are also relevant to counter "allegations about [his] behavior leading to the resignation of one or more regional managers."[27]  Finally, he asserts discovery regarding regional manager terminations may show whether downsizing pressure from T-Mobile motivated the terminations.[28]

MobileOne argues the discovery requests are overbroad because employees and managers resign or are terminated for myriad reasons unrelated to Mr. Andra's

---

[23] (*See id.* at 1–2.)

[24] (*See* Pl.'s Suppl. Br., Doc. No. 64 at 1–2.)

[25] (*See id.* at 2.)

[26] (*See id.* at 1–2.)

[27] (*Id.* at 2.)

[28] (*See id.*)

5

termination.[29] MobileOne also argues terminations and resignations after Mr. Andra's termination are irrelevant because they have no relation to the effect Mr. Andra had on employees.[30] MobileOne contends any drop in sales resulting from employee departures is irrelevant because Mr. Andra was terminated for his behavior, not his stores' financial performance.[31] According to MobileOne, Mr. Andra's comparative discipline theory fails because he was not similarly situated to other employees or regional managers.[32]

Finally, MobileOne argues the requests are not proportional.[33] MobileOne estimates 600 people have worked at the former TMS stores since July 2022.[34] To respond to Mr. Andra's requests, MobileOne asserts it would have to pull the requested information "manually" by going through the files of every resigned and terminated employee at all stores for the past two years, identifying whether the employee was working at a former TMS store at the time of resignation or termination, identifying the reason for resignation or termination, and compiling the information into a list by hand.[35]

Mr. Andra's requests regarding both the employees and the regional managers are relevant and proportional to the needs of the case.

---

[29] (*See* Opp'n 2, Doc. No. 57.)

[30] (*See* Def.'s Suppl. Br. 3, Doc. No. 65.)

[31] (*See id.*)

[32] (*See id.* at 2.)

[33] (*See* Opp'n 2–3.)

[34] (*Id.* at 2.)

[35] (*Id.* at 2–3.)

### A. *Employee Resignations and Terminations*

For the time period before Mr. Andra's termination, information regarding employee resignations is relevant to Mr. Andra's theory that MobileOne's change in pay structure caused mass resignations, which led to a drop in sales. Mr. Andra alleges MobileOne then fabricated cause to terminate him based on the poor financial performance of his stores. Accordingly, this information is relevant to Mr. Andra's breach-of-contract claim—specifically, to whether MobileOne had legitimate cause to terminate him. The fact that MobileOne disputes the reasons for Mr. Andra's termination does not render this discovery irrelevant.

Employee resignations after Mr. Andra's termination are relevant to counter MobileOne's allegation that Mr. Andra's behavior (rather than MobileOne's policies) caused employees to resign.[36] Similar rates of employee resignations, before and after Mr. Andra's termination, could suggest the resignations were caused by factors other than Mr. Andra's behavior. Likewise, employee terminations before and after Mr. Andra's termination inform Mr. Andra's theory that his stores' poor financial performance was due to factors such as downsizing pressure from T-Mobile, rather than his behavior or management.

These requests are proportional to the needs of the case. MobileOne has not shown that providing two years of employee resignation and termination data would be unduly burdensome. MobileOne's claim that it would be required to "manually" review

---

[36] Mr. Andra represents in his supplemental brief that MobileOne makes this allegation, (*see* Pl.'s Suppl. Br. 1–2, Doc. No. 64), and MobileOne does not dispute this in its supplemental response. (*See* Def.'s Suppl. Br., Doc. No. 65; *see also* Opp'n 2, Doc. No. 57 (asserting Mr. Andra was terminated for inappropriate behavior and creation of a hostile work environment).)

the employee file of every resigned or terminated employee in order to provide the requested data is unsupported by evidence.[37]  But even assuming this is true, MobileOne fails to demonstrate a manual review would be unduly burdensome. Although MobileOne provides an estimate of the total number of its employees, it provides no estimate of the number of resigned or terminated employees.  And MobileOne provides no evidence or approximation of the time or costs required to review the files.  Given the relevance of this discovery to a central issue in this case, the burden of responding is proportional to the needs of the case.

### B. Regional Manager Resignations and Terminations

Where MobileOne alleges Mr. Andra's behavior caused one or more regional managers to resign, discovery regarding regional manager resignations during Mr. Andra's employment is relevant.[38]  And resignations of regional managers after Mr. Andra's employment are relevant for the reasons discussed above—namely, to counter MobileOne's allegation that Mr. Andra's behavior (rather than MobileOne's policies) caused employees to resign. This discovery bears on whether MobileOne had legitimate cause to terminate Mr. Andra.

Whether discovery regarding regional manager terminations is relevant is a closer call.  As an initial matter, Mr. Andra's argument regarding comparative discipline is unconvincing.  This theory generally applies to Title VII discrimination claims, where a

---

[37] Presumably, an electronics company of MobileOne's size maintains some sort of computerized records of employee departures.

[38] Mr. Andra represents in his supplemental brief that MobileOne makes this allegation, (see Pl.'s Suppl. Br. 1–2, Doc. No. 64), and MobileOne does not dispute this in its supplemental response.  (See Def.'s Suppl. Br., Doc. No. 65.)

plaintiff claims to have been treated differently than other similarly-situated employees because of race, color, religion, sex, or national origin.[39] But Mr. Andra does not bring a Title VII discrimination claim in this case. Rather, he asserts breach of contract and related tort claims, based on allegations that MobileOne lacked cause to terminate him under his employment contract.[40] Mr. Andra cites only Title VII discrimination cases in support of his argument,[41] and he does not explain how a comparative discipline theory is relevant outside this context. Even if comparative discipline were applicable, Mr. Andra does not explain why he should be considered similarly situated to regional managers. He does not argue, for example, that regional managers had comparable employment contracts or performance standards.[42]

---

[39] *See* 42 U.S.C. § 2000e-2; *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (discussing comparative discipline in the context of a Title VII discrimination claim).

[40] (*See* Compl. ¶¶ 93–128, Doc. No. 2 (asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, fraud in the inducement, "wrongful termination in violation of public policy," declaratory judgment, unjust enrichment, and attorneys' fees).) Mr. Andra's fourth cause of action, labeled "wrongful termination in violation of public policy," mentions Title VII but does not plead discrimination. (*See id.* ¶¶ 106–110.) Rather, it alleges Mr. Andra was terminated for engaging in protected activity under Title VII (opposing sexual harassment)—a retaliation claim. (*See id.*)

[41] (*See* Pl.'s Suppl. Br. 1 n.2 (citing *Kendrick*, 220 F.3d 1220, and *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312 (10th Cir. 1992)).)

[42] *See Kendrick*, 220 F.3d at 1232 ("An employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." (internal quotation marks omitted)). Indeed, MobileOne argues Mr. Andra was the only employee at MobileOne—other than some C-suite officials—who had a three-year contract and whom MobileOne could terminate only under specific circumstances outlined in the contract. (*See* Def.'s Suppl. Br. 2, Doc. No. 65.)

The only other argument Mr. Andra makes regarding the relevance of regional manager terminations is that they may show downsizing pressure from T-Mobile. Terminations of regional managers may have some bearing on store performance, and inform the extent to which the poor performance of former TMS stores was caused by Mr. Andra's management or other factors. Accordingly, this discovery has some relevance to Mr. Andra's claims.

Further, MobileOne has not demonstrated producing information and documents regarding regional manager resignations and terminations would be unduly burdensome. Presumably, the number of regional managers who resigned or were terminated since July 2022 (when MobileOne acquired the TMS stores) is not high. Thus, the burden of responding does not outweigh the likely benefit.

## CONCLUSION

Mr. Andra's motion[43] is granted. Within fourteen days, MobileOne must fully respond to Interrogatories 8, 9, and 13 and RFPs 11 and 14.

DATED this 20th day of August, 2024.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[43] (Doc. No. 47.)