UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TODD ANDRA,<br><br>Plaintiff,<br><br>v.<br><br>MOBILEONE LLC,<br><br>Defendant. | MEMORANDUM DECISION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Civil No. 2:23-cv-00188-AMA-DAO<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Daphne A. Oberg |

This matter comes before the Court on a Motion for Summary Judgment filed by Defendant MobileOne.[1] The Court did not hear oral argument. Based on the parties' briefing and the applicable law, the Court grants Defendant's Motion.

## BACKGROUND[2]

Defendant MobileOne LLC ("MobileOne") is an Arizona limited liability company.[3] MobileOne's organization follows a hierarchy where retail consultants report to store managers, who report to regional managers, who report to area directors, and so forth.[4] Plaintiff Todd Andra was an Area Director over the "Rockies" region overseeing six regional managers.[5]

---

[1] ECF No. 96.

[2] Unless noted otherwise, this section will refer only to undisputed material facts.

[3] ECF No. 96, Ex. C at 3.

[4] ECF No. 96, Ex. B at 12:10–13:6.

[5] ECF No. 96, Ex. B at 23:11–16, 38:23–39:21.

Before working for MobileOne, Mr. Andra worked at The Mobile Source, [6] a T-Mobile retailer owned by Mr. Andra's brother, Tom Andra.[7] On July 1, 2022, MobileOne acquired The Mobile Source,[8] and Tom in turn gifted Mr. Andra $1.2 million from the acquisition.[9]

Upon acquisition, Mr. Andra signed a three-year Employment Agreement ("Agreement") with MobileOne.[10] Mr. Andra was not involved in negotiating the Agreement; rather, Tom Andra did so.[11] The Agreement requires Mr. Andra to "at all times, loyally and conscientiously perform all of the duties and obligations either expressly or implicitly required of [him] by the terms of [the] Agreement."[12] Regarding bonuses, the Agreement states, "To the extent Company chooses to offer Employee any bonus, the same will be at Company's discretion."[13] The Agreement also allows MobileOne to terminate Mr. Andra within the three-year period "for cause" and subsequently not pay the agreed-upon severance compensation.[14] "For cause" termination under the Agreement is defined to include the following provisions:

> 5.1.4 Employee breaches or neglects the material duties or covenants which Employee is required to perform and adhere to under the terms of Employee's employment and fails to cure within a reasonable period of time following written notice.
> 5.1.5 Employee's work performance or incompetence results in Employee's inability to reasonably perform Employee's duties after reasonable counseling, documentation and

---

[6] ECF No. 96, Ex. A at 69:17–70:8.

[7] *Id*. at 22:19–25.

[8] *Id*. at 69:17–70:8.

[9] *Id*. at 22:19–25.

[10] ECF No. 96, Ex. C.

[11] ECF No. 96, Ex. A at 58:4–9; 117:19–118:19.

[12] ECF No. 96, Ex. C at 1.

[13] *Id*.

[14] *Id*. at 2. Section 5.2 contemplates a severance compensation "[s]hould Employee's employment with Company be terminated by Company for any reason other than 'for cause' as defined in Section 5.1 above."

clear objectives are set and unmet and fails to cure within a reasonable period of time following written notice.[15]

After the acquisition, Mr. Andra retained his personal assistant, Ms. Sydney Butler.[16] This arrangement continued until MobileOne changed Ms. Butler's duties in July 2022.[17] Outraged, Mr. Andra sent several texts and a seven-minute voicemail to Ms. Butler containing inflammatory and explicit statements about MobileOne's management,[18] including Mr. Nick Guarine, who was Mr. Andra's supervisor at that time.[19] The messages involved statements such as "they're all full

---

[15] *Id*.

[16] ECF No. 96, Ex. A at 73:5–74:13.

[17] *Id*. at 92:13–25.

[18] "I'm really f****** pissed right now and I'm crying because I know what Nick [Guarine] is Trying to do. You don't know them, I know them they are fake as f*** they literally just have a bank loan and they're playing dress up! I'm on the phone with him everyday I'm on Zoom calls with them everyday. These guys have no idea how to improve or fix stores. NOT OVER EXAGGERATING." ECF No. 96, Ex. E at 4.

"[T]he goal has always been for me to run everything. I believe that's what will happen in the end . . . And today you might think this is silly and me sounding like some alpha male with a chip on my shoulder. But today was an act of war, because I've set the table that you were sacred to me. That you were untouchable to me . . . But [Nick Guarine] knew because I had this conversation with him. When I called and he told you one thing and what his motives were, but then he told me something completely different. And then he brought up the job thing. I knew it was personal. He's trying to protect himself. Think about it. I'm here. I have a three-year contract. You think anybody has a contract? Do you not think he talks about that? Do you not think that that's something that bugs the shit out of him? I look like the golden boy. So the target's on my back. That's fine, okay? . . . I'm telling you I am a new man. I am not the same Todd from even eight years ago, four years ago, a year ago . . . Sydney, I hope you put everything that I've said on lockdown. I care about you. You were my work wife. That sounds weird, okay? I should have spoke to you more. I should have coached you more . . . But right now I'm going to be an asshole and act like I don't care. because that is what I have to do. I have to be the guy that says okay you want to try to take that away from me? What, you think I'm gonna cry? You think I'm gonna throw in the towel? I'm gonna tap out? You think my calls are gonna change? No, it's gonna make me better . . . I'm gonna miss you. I hate them for this . . . I want you to worry about me, but you don't have to. I adore you." ECF No. 96, Ex. F at 3–6.

[19] ECF No. 96, Ex. B at 13:1–2.

of s\*\*\*," "they're playing dress up," and "they are fake as f\*\*\*."[20] Ms. Butler provided the text messages and voicemail to MobileOne's human resources department shortly after receiving them.[21]

In response to the situation with Ms. Butler, on July 25, 2022, MobileOne sent Mr. Andra a letter ("First Notice") stating that he breached the Agreement's obligation to "loyally and conscientiously perform all of the duties and obligations either expressly or implicitly required" by taking affirmative action to undermine the MobileOne ownership team.[22] It also stated that Mr. Andra's actions gave rise to for-cause termination under section 5.1.4 of the Agreement unless he could cure the breach within a reasonable period of time.[23] It then suspended him from work for "at least a week" and instructed him to present a plan to cure the breach by August 1.[24] On that same day, Mr. Andra met with Ms. Nicollette Filippone—MobileOne's HR Director[25]—and Mr. Mark Qualls—MobileOne's Vice President of Operations[26]—over Zoom to discuss the incident with Ms. Butler and how it demonstrated disloyalty.[27]

---

[20] ECF No. 96, Ex. E at 4.

[21] ECF No. 96, Ex. G at 32:17–23.

[22] ECF No. 96, Ex. H.

[23] *Id*.

[24] *Id*.

[25] ECF No. 96, Ex. G at 31:9.

[26] *Id*. at 9: 7–9.

[27] ECF No. 96, Ex. A 123:4–23; 118:20–119:4. Mr. Andra attempts to dispute this by mischaracterizing a statement in his deposition. The question posed to Mr. Andra was, "So did [Ms. Filippone and Mr. Qualls] have a conversation with you about being disloyal?" Mr. Andra then testified, "Yeah. Right—just now." Contrary to Mr. Andra's arguments, "just now" does not indicate that Mr. Andra first learned of his disloyalty during the deposition. Clearly, he did not have a conversation with Ms. Filippone and Mr. Qualls at his deposition. Rather, it refers to the Zoom recording of the meeting played earlier at the deposition.

Mr. Andra submitted a plan to cure his breach, [28] but the plan was rejected because MobileOne felt it did not provide a substantive plan for avoiding the kind of behavior he engaged in with Ms. Butler.[29] After further discussions with management, Mr. Andra sent a second letter to MobileOne identifying other texts that he had sent and affirming that he would not "bad-mouth[] the company" and would follow proper reporting protocol in the future.[30]

As time went on, regional managers under Mr. Andra reported to human resources that there were issues with Mr. Andra's behavior and leadership style that needed to be addressed.[31]

---

[28] ECF No. 96, Ex. I. Mr. Andra attempts to dispute that his First Cure Letter was unacceptable because, as he claims, the First Notice contained no explanation of how Mr. Andra had breached the Agreement or any duties and obligations. But the contents of the First Notice are undisputed, as is the fact that Mr. Andra met with Ms. Filippone and Mr. Qualls to discuss his behavior. No reasonable jury could find that Mr. Andra lacked notice of what his breach entailed, and thus, the dispute is not genuine. Moreover, the dispute is not material. It is insignificant whether Mr. Andra's letter was in fact unacceptable, as he was given another opportunity to present a plan, and that plan was accepted. In other words, he was not terminated over this letter.

[29] ECF No. 96, Ex. G at 39:20–40:7.

[30] ECF No. 96, Ex. J.

[31] ECF No. 96, Ex. G at 53:12–54:9; ECF No. 96, Ex. M at 50:19–51:11; ECF No. 96, Ex. N at 39:6–40:4, 81:12–18; ECF No. 96, Ex. O at 19:4–7, 54:13–20; ECF No. 96, Ex. L. Mr. Andra contends that the HR Complaint (ECF No. 96, Ex. L) is inadmissible because it does not qualify for the business records exception to the rule against hearsay. A business record qualifies for the exception when the document was (1) prepared in the normal course of business, (2) made at or near the time of the events recorded; (3) based on the personal knowledge of the entrant or of a person who had a business duty to transmit the information to the entrant; and (4) the opponent does not show that the sources, methods, and circumstances by which the record was created indicate lack of trustworthiness. Fed. R. Evid. 803(6). Here, Ms. Jensen, who created the report, states in her declaration that she regularly conducts investigations and interviews in human resource matters at MobileOne and that she always documents her investigations in this particular form either during the interview itself or the same day. ECF No. 120, Ex. Z ¶¶ 5–9. She herself participated in all of the interviews. *Id.* ¶¶ 10–13. And several participants confirmed that they did not provide any untruthful information during the interviews. ECF No. 96, Ex. N at 84:19–25; ECF No. 96, Ex. O at 54:13–20. Thus, the HR Complaint falls into the business records exception.

However, the HR Complaint has a double hearsay issue because it describes statements the regional managers told Ms. Jensen. It appears that MobileOne attempts to offer these statements for the truth of the matter asserted, thus constituting hearsay, but MobileOne does not offer any hearsay exception into which the statements fall. Therefore, the statements are inadmissible, and

There were also negative feelings expressed among Mr. Andra and the regional managers when MobileOne's leadership changed compensation structures in a way that impacted legacy The Mobile Source employees.[32]

On November 3, 2022, MobileOne issued a second notice of breach ("Second Notice") to Mr. Andra stating that the company had received complaints that he was creating a hostile work environment and that he was failing to meet expected performance standards.[33] MobileOne arranged for a father-son pair of leadership counselors, Drs. Wilke, to have one-on-one coaching meetings with Mr. Andra.[34] The letter also set two objectives for Mr. Andra to achieve: (1) not retaliate against suspected complainants, and (2) follow policies and procedures while upholding a positive demeanor regarding MobileOne.[35] It then gave him opportunity to cure his behavior within a reasonable time by adhering to the objectives.[36]

Mr. Andra met with Drs. Wilke for a coaching assessment on November 7, 2022.[37] After Drs. Wilke met with Mr. Andra, they had one-on-one sessions with Mr. Andra's regional managers to discuss their issues and concerns with Mr. Andra's behavior and other related circumstances at

---

the Court may only consider the HR Complaint as evidence that an HR investigation occurred but must disregard the substantive information the HR Complaint contains.

Regardless, even were the Court to disregard the HR Complaint in its entirety, it is undisputed that several regional managers under Mr. Andra complained about Mr. Andra's behavior.

[32] ECF No. 96, Ex. M. at 176:23–177:12; ECF No. 96, Ex. N at 114:2–12.

[33] ECF No. 96, Ex. P ("We have received multiple complaints about your work performance, namely that you are creating a hostile work environment and in other ways not meeting your expected performance standards, acting incompetently, and failing in your duties."). The Letter also states that "[t]hese issues give rise to a termination 'for cause' under paragraph 5.1.5."

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] ECF No. 96, Ex. Q at 1.

MobileOne.[38] The Wilkes' assessment described an ongoing hostile work environment, with some regional managers covering for Mr. Andra.[39] Mr. Andra also had weekly coaching meetings with Mr. Qualls that continued during this time.[40]

On December 5, 2022, MobileOne issued another notice ("Third Notice") to Mr. Andra to fulfill the "documentation and setting of additional clear objectives" under section 5.1.5.[41] The letter reiterated the admonitions in the Second Notice and set forth ten "non-negotiable" objectives based off of the Wilkes' recommendations, which substantively required Mr. Andra to meet basic management expectations in a professional manner.[42]

On December 8, 2022, Mr. Andra sent text messages to a regional manager calling Mr. Qualls a "douche," "a problem," and "dam of progress."[43] Several regional managers reported that the hostile work environment persisted.[44] On January 6, 2023, Mr. Qualls reported that several regional managers felt as if Mr. Andra continued to "fight[] full adoption of all things [MobileOne]."[45] On January 27, 2023, MobileOne terminated Mr. Andra for cause, citing the persisting complaints and communication issues.[46]

---

[38] *Id*. at 2–4.

[39] *Id*. at 4–7; ECF No. 96, Ex. S.

[40] ECF No. 96, Ex. G at 68:13–14.

[41] ECF No. 96, Ex. T.

[42] *Id.* (requiring professional boundaries, no gossip or rumor-making, sincere apologies, etc.).

[43] ECF No. 96, Ex. U; ECF No. 96, Ex. V.

[44] ECF No. 96, Ex. D at 10:15–21, 13:21–14:2, 15:16–19, 17:11–18:21; ECF No. 96, Ex. W.

[45] ECF No. 96, Ex. W.

[46] ECF No. 96, Ex. D at 9:21–24.

On March 20, 2023, Mr. Andra filed his Complaint in the instant action. [47] On January 24, 2025, MobileOne filed its Motion for Summary Judgment. [48] Mr. Andra's amended opposition was filed on March 18, 2025, [49] and MobileOne's reply was filed on May 23, 2025. [50]

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [51] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented. [52] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party. [53]

## ANALYSIS

This case concerns the employment relationship between Plaintiff Todd Andra and Defendant MobileOne. In the instant Motion, MobileOne seeks summary judgment in its favor on all of the causes of action alleged in Mr. Andra's Complaint: (1) breach of contract, (2)

---

[47] ECF No. 2.

[48] ECF No. 96

[49] ECF No. 110. Plaintiff did not refile the exhibits attached to his initial opposition with his amended opposition, which was filed after the granting of a motion for leave to file an overlength brief. ECF No. 109. As this appears to have been the result of docketing confusion and Defendant's reply responds to these exhibits such that it is clear Defendant located them, the Court considers the exhibits as if they were properly attached to the amended opposition. The exhibits are found at ECF No. 107.

[50] ECF No. 120.

[51] Fed. R. Civ. P. 56(a).

[52] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[53] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

breach of the covenant of good faith and fair dealing, (3) fraud in the inducement, (4) wrongful

termination in violation of public policy, (5) declaratory judgment, (6) unjust enrichment, and (7)

attorney's fees. Mr. Andra concedes that his cause of action for declaratory judgment fails

because it is moot.[54] He also concedes that his cause of action for attorneys' fees fails because it

is not an independent cause of action.[55] Based on these concessions, the Court will not address

those issues and will focus, instead, on the disputed claims.[56]

## I.    MobileOne is entitled to summary judgment on Mr. Andra's breach of contract claim because MobileOne had cause to terminate Mr. Andra as set forth in the Agreement

MobileOne argues that summary judgment is appropriate on Mr. Andra's claim for

breach of contract because Mr. Andra cannot show that he performed under the contract and that

MobileOne breached the contract. The Court finds MobileOne's arguments persuasive.

Under Utah law, to establish a breach of contract, Mr. Andra must show a contract, his

performance under the contract, breach of the contract by MobileOne, and damages.[57] "In the

employment context, Utah courts recognize a party's right to terminate a contract when it is

---

[54] ECF No. 110 at 3.

[55] *Id.*

[56] To address the issue of what law applies to this dispute, "[a]bsent a choice-of-law provision, a federal court sitting in diversity must apply the forum state's choice-of-law principles, which in this case involves employing Utah's 'most significant relationship' test." *Salt Lake Trib. Publ'g Co., LLC v. Mgmt. Plan., Inc.*, 390 F.3d 684, 695 (10th Cir. 2004). Here, the Agreement contains no choice-of-law provision, and the parties appear to agree that Utah bears the most significant relationship to the Agreement and to the non-contractual claims, as both parties exclusively refer to Utah law in their briefing. *See Cornaby's LLC v. Carnet, LLC*, No. 2:14–cv–00462–JNP, 2017 WL 3503669, at *13 n.7 (D. Utah Aug. 15, 2017) (applying Utah law because movant cited only Utah law in its motion and non-movant did not challenge the application of Utah law). Therefore, the Court will apply Utah law to the claims arising out of the Agreement, as well as to the related tort and equitable claims.

[57] *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224.

established pursuant to objective criteria."[58] "In such situations, the contract by its terms gives a party the express right to terminate the contract upon objectively defined criteria."[59] "[A]s a general rule, if a party has a legal right to terminate a contract, its motive for exercising that right is irrelevant."[60]

Here, the parties do not dispute that the Agreement is a valid, enforceable contract. The dispute, rather, lies in whether Mr. Andra performed under the Agreement and whether MobileOne breached the Agreement. Mr. Andra alleges in his Complaint that MobileOne breached the Agreement by "fabricating 'cause' for his termination" and thereby refusing to pay Mr. Andra the severance compensation contemplated by section 5.2.[61] MobileOne argues that it was Mr. Andra who breached the Agreement, giving rise to 'for cause' termination. Thus, the questions of whether Mr. Andra performed under the Agreement and whether MobileOne breached it are intertwined in this case.

The Agreement gives MobileOne the right to terminate Mr. Andra. "For cause" termination is defined to include the following relevant provisions:

> 5.1.4 Employee breaches or neglects the material duties or covenants which Employee is required to perform and adhere to under the terms of Employee's employment and fails to cure within a reasonable period of time following written notice.
> 5.1.5 Employee's work performance or incompetence results in Employee's inability to reasonably perform Employee's duties after reasonable counseling, documentation and clear objectives are set and unmet and fails to cure within a reasonable period of time following written notice.[62]

---

[58] *Medina v. Univ. of Utah*, No. 22-4110, 2023 WL 6890930, at *6 (10th Cir. Oct. 19, 2023) (citation modified).

[59] *Id.* (citation modified).

[60] *Id.*

[61] ECF No. 2 ¶ 96.

[62] ECF No. 96, Ex. C at 2. The parties do not dispute that these provisions constitute objectively defined criteria.

MobileOne argues that Mr. Andra's conduct implicated these provisions such that termination was warranted when, first, Mr. Andra sent inappropriate communications to Ms. Butler, and, second, Mr. Andra created a hostile work environment, and the issues continued after counseling and clear objectives were set.[63]

As a threshold matter, Mr. Andra points to the first breach rule and argues that any breach he made must be shown to be a *material* breach. While the law Mr. Andra cites is correct in general, the first breach rule is not truly implicated in this case. Pursuant to the first breach rule, "[w]hen one party materially breaches a provision of a contract, the other party's subsequent failure to perform a specific obligation is excused . . . if the promises are [mutually dependent]."[64] Thus, under the first breach rule, whether a breach is material or "so substantial that it could be reasonably deemed to vindicate the other's refusal to perform" is significant. [65] Here, the issue is not that MobileOne failed to perform under the contract following Mr. Andra's alleged breach. Rather, following Mr. Andra's alleged breach, MobileOne *performed* under the contract in exercising its right to terminate him. The issue is whether MobileOne was justified in doing so. The language of the Agreement—"Employee breaches or neglects the material duties or covenants"[66]—does not require that Mr. Andra's breach be material, and thus the Court need

---

[63] MobileOne characterizes the third notice Mr. Andra received as the "Third Breach Notice." Examining the notice, however, reveals that such a characterization is inaccurate. The notice does not identify a separate breach but is rather connected to the second notice and the hostile work environment issue. Thus, there are not three potential incidents giving rise to for-cause termination at issue—there are two. The Court will examine the issues accordingly.

[64] *Larsen v. Stauffer*, 2022 UT App 108, ¶ 26, 518 P.3d 175 (alteration in original) (quoting *Cross v. Olsen*, 2013 UT App 135, ¶ 30 n.4, 303 P.3d 1030).

[65] *Cross*, 2013 UT App 135 at ¶ 26.

[66] ECF No. 96, Ex. C at 2.

not find a material breach when determining whether Mr. Andra's actions gave rise to for-cause termination. If it were found that MobileOne did not have cause to terminate Mr. Andra such that it breached the Agreement by doing so, it is possible the first breach rule may come into play. But, for the reasons below, the undisputed record shows that MobileOne had cause to terminate Mr. Andra.

A.  Text Messages to Ms. Butler

The First Notice states that Mr. Andra breached section 2.3's requirement to "loyally and conscientiously perform all of the duties and obligations either expressly or implicitly required."[67] The letter further states that "implicitly required by this clause is a duty to not take affirmative action to undermine the MobileOne ownership team." [68]

First, Mr. Andra argues that he was not aware that the First Notice concerned the text messages he sent to Sydney Butler. This is unconvincing. Even if the letter confused him, it is undisputed that he then met with Ms. Filippone and Mr. Qualls to discuss his conduct with Ms. Butler and how it was inappropriate.[69]

Next, Mr. Andra argues that the terms "loyally" and "conscientiously" are ambiguous. "An ambiguity exists in a contract term or provision if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies."[70] The existence of an ambiguity in a contract is a question of law.[71] If an

---

[67] ECF No. 96, Ex. H.

[68] *Id*.

[69] ECF No. 96, Ex. A 123:4–23; 118:20–119:4.

[70] *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 20, 54 P.3d 1139 (citation modified).

[71] *Id*. ¶ 22.

ambiguity exists, the parties' intent "becomes a question of fact."[72] Although Mr. Andra claims these terms are ambiguous, the definitions he offers to interpret them are the standard meanings of the terms, and there is no evidence that MobileOne intended the terms to mean something else. Thus, the terms are not ambiguous. Instead, what the parties are truly disputing is whether Mr. Andra's conduct fell within the commonly accepted meanings of these terms. Mr. Andra claims his actions were loyal and conscientious while MobileOne claims they were not.

Turning to those actions, it is undisputed that Mr. Andra told his subordinate that, referencing MobileOne's executive team, "they're full of s***," that "they are fake as f***," that "they literally just have a bank loan and they're playing dress up,"[73] and that their actions in changing Ms. Butler's responsibilities were "an act of war" against Mr. Andra.[74] Mr. Andra asserts that these statements are not disparaging but are, rather, legitimate concerns Mr. Andra had about the company. But even if legitimate concerns undergirded these statements, no reasonable jury could find that communicating those concerns in this manner to his subordinate was either loyal or conscientious. As such, these messages constitute a breach of section 2.3 of the Agreement.

Before this breach gave rise to for-cause termination, however, Mr. Andra was entitled to attempt to cure his breach. In his Second Cure Letter, he committed to address concerns "up the chain of command" and to stop "bad-mouthing the company."[75] MobileOne argues that it could have terminated Mr. Andra for failing to address concerns up the chain of command and being negative regarding MobileOne's change to the payment structure in November 2022. Two of Mr.

---

[72] *Id.*

[73] ECF No. 96, Ex. E.

[74] ECF No. 96, Ex. F at 3.

[75] ECF No. 96, Ex. J.

Andra's regional managers said that Mr. Andra was negative on conference calls about the pay structure changes.[76] Mr. Andra, on the other hand, maintains that he did what he promised to do.[77] While there is thus some factual dispute over this, the dispute is immaterial because MobileOne did not terminate Mr. Andra at this point. But while MobileOne submits that the Court could end its analysis here, the Court must continue.

B. <u>Hostile Work Environment</u>

It is undisputed that in October 2022, several regional managers complained to HR about Mr. Andra's behavior and how that behavior needed to change because it was interfering with the workplace.[78] These complaints implicate section 5.1.5 of the Agreement, as Mr. Andra's behavior was resulting in his inability to reasonably perform his job duty of managing his subordinates.

MobileOne provided Mr. Andra with notice of the complaints: "We have received multiple complaints about your work performance, namely that you are creating a hostile work environment and in other ways not meeting your expected performance standards, acting incompetently, and failing in your duties."[79] The Second Notice also states that "[t]hese issues

---

[76] ECF No. 96, Ex. M. at 176:23–177:12; ECF No. 96, Ex. N at 114:2–12.

[77] ECF No. 107, Ex. 2 ¶ 30 ("I was forced to acknowledge to subordinates that the compensation changes would have negative impacts on their compensation, and that I did not feel the changes made sense, and promised to continue trying to advocate against the changes with MobileOne management and my subordinates so the concerns about the changes could be discussed in detail."); ECF No. 96, Ex. J ("When my direct reports bring concerns to me, and I agree that the concerns are valid, I will share that fact with them without bad-mouthing the company. I will instead tell them that I share their concerns, and that I am happy to take them to higher management to see if we can get a resolution to the concerns.").

[78] ECF No. 96, Ex. G at 53:12–54:9; ECF No. 96, Ex. M at 50:19–51:11; ECF No. 96, Ex. N at 39:6–40:4, 81:12–18; ECF No. 96, Ex. O at 19:4–7, 54:13–20; ECF No. 96, Ex. L.

[79] ECF No. 96, Ex. P.

give rise to a termination 'for cause' under paragraph 5.1.5,"[80] which provides, "Employee's work performance or incompetence results in Employee's inability to reasonably perform Employee's duties after reasonable counseling, documentation and clear objectives are set and unmet and fails to cure within a reasonable period of time following written notice."[81] The letter then laid out several specific expectations.[82] First, Mr. Andra was not to retaliate against those who complained against him.[83] Second, Mr. Andra was to follow MobileOne's policies and procedures while upholding a positive demeanor regarding MobileOne messaging in all workplace interactions.[84]

To comply with section 5.1.5's "reasonable counseling" measure, MobileOne hired professional coaches, Drs. Wilke, to assess and work with Mr. Andra.[85] The evaluation occurred on November 7, 2022.[86] Drs. Wilke interviewed Mr. Andra and his subordinates and found that there were several problems with Mr. Andra's leadership style.[87] Specifically, he used fear and fear-based tactics to motivate his subordinates.[88]

After the feedback from the Wilkes' assessment, on December 5, 2022, MobileOne issued a Third Notice to Mr. Andra to fulfill the "documentation and setting of additional clear

---

[80] *Id*.

[81] ECF No. 96, Ex. C at 2.

[82] ECF No. 96, Ex. P.

[83] *Id*.

[84] *Id*.

[85] *Id*.

[86] ECF No. 96, Ex. Q at 1.

[87] *Id*. at 2–7; ECF No. 96, Ex. S.

[88] ECF No. 96, Ex. Q at 3.

objectives" requirement of section 5.1.5.[89] This notice kept the objectives from the previous letter and expanded expectations to adopt the Wilkes' recommendations.[90] Mr. Andra was to follow ten additional expectations.[91]

Despite clear guidance, Mr. Andra's behavior continued to be an issue that interfered with the workplace. On December 8, 2022, Mr. Andra sent text messages to one of his subordinates calling Mr. Qualls a "douche," "a problem," and a "dam of progress."[92] In January 2023, several of Mr. Andra's subordinates reported to Mr. Qualls that Mr. Andra's inappropriate management issues persisted.[93] On January 6, 2023, Mr. Qualls reported that several regional managers felt as if Mr. Andra continued to "fight[] full adoption of all things [MobileOne]."[94] MobileOne terminated Mr. Andra on January 27, 2023.[95]

In this manner, the undisputed record shows that Mr. Andra had a pattern of undermining MobileOne's ownership team in violation of section 2.3 of the Agreement's requirement to perform his job duties loyally and conscientiously and that he failed to cure this behavior following the First Notice. Thus, MobileOne had cause to terminate Mr. Andra under section 5.1.4. Additionally, the undisputed record shows that Mr. Andra continued in his failure to

---

[89] ECF No. 96, Ex. T at 1.

[90] *Id*. at 1–2.

[91] *Id*.

[92] ECF No. 96, Ex. U; ECF No. 96, Ex. V.

[93] ECF No. 96, Ex. D at 10:15–21, 13:21–14:2, 15:16–19, 17:12–18:21; ECF No. 96, Ex. W.

[94] ECF No. 96, Ex. W.

[95] ECF No. 96, Ex. D at 9:21–24.

manage his subordinates appropriately, even after being given counseling and clear objectives.[96] Thus, MobileOne also had cause to terminate Mr. Andra under section 5.1.5.

Because MobileOne had cause to terminate Mr. Andra under both sections 5.1.4 and 5.1.5 of the Agreement, MobileOne had the right to terminate Mr. Andra and to refuse to pay the severance contemplated in section 5.2. As such, no reasonable jury could find that MobileOne breached the contract. Although Mr. Andra attempts to argue that MobileOne terminated him because it didn't like him and because it was struggling financially, MobileOne's motives are irrelevant because it had a legal right to terminate the contract.[97] Thus, summary judgment in favor of MobileOne is appropriate on Mr. Andra's claim for breach of contract.[98]

---

[96] Mr. Andra argues that genuine issues of fact exist regarding whether he had reasonable time to cure this violation because MobileOne terminated Mr. Andra around a month after his individual sessions with Drs. Wilke began. *See* ECF No. 107, Ex. 2 ¶ 34. The Agreement does not provide a set period of time that MobileOne was required to give Mr. Andra to cure his behavior. The undisputed facts show that Mr. Andra received notice of the complaints against him in November. ECF No. 96, Ex. P. He was not terminated until the end of January. While Mr. Andra may have only had around a month of individual coaching with Drs. Wilke, he had around three months to improve his behavior. Although it is possible he did improve in some ways as he claims, his behavior remained inappropriate such that it was disrupting the workplace, and he presents no evidence and points to no law that three months is an unreasonable amount of time. Without more than conclusory assertions, no reasonable jury could find that Mr. Andra was not given a reasonable amount of time to cure his behavior.

Mr. Andra also argues that genuine issues of material fact exist over whether he received reasonable counseling, suggesting that he should have been able to receive executive coaching from Drs. Wilke for a full year. Mr. Andra, however, does not argue that "reasonable counseling" is ambiguous, and the plain meaning of the terms do not require MobileOne to afford Mr. Andra a particular form of counseling for any specific length of time. Rather, it need only be reasonable. And Mr. Andra offers no evidence that the counseling he did receive, including his weekly meetings with Mr. Qualls, was unreasonable. Thus, no genuine issues of fact exist here either.

[97] *See Medina*, No. 22-4110, at *6 ("[A]s a general rule, if a party has a legal right to terminate a contract, its motive for exercising that right is irrelevant.").

[98] MobileOne asserts that even if it did breach the Agreement, summary judgment remains warranted on Mr. Andra's contractual claims because he failed to mitigate his damages. However, because MobileOne did not breach the contract as a matter of law, the Court need not reach the issue of whether Mr. Andra failed to mitigate.

## II. MobileOne is entitled to summary judgment on Mr. Andra's second cause of action because no reasonable jury could find that MobileOne breached the implied covenant of good faith and fair dealing

MobileOne asserts that it is entitled to summary judgment on Mr. Andra's claim for breach of the covenant of good faith and fair dealing because Mr. Andra cannot show that MobileOne breached the covenant. Again, the Court finds MobileOne's arguments persuasive.

The "covenant of good faith and fair dealing inheres in almost every contract."[99] Under the covenant, "both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract."[100] To comply with this obligation, "a party's actions must be consistent with the agreed common purpose and the justified expectations of the other party."[101]

Under Utah law, a claim for breach of contract and a claim for the breach of the covenant of good faith and fair dealing may be pleaded as separate causes of action.[102] When both are pleaded, claims for express breach of contract "arise from a breach of the obligations expressly promised in the contract," while "the 'purpose of the good faith doctrine in contract law is to protect the reasonable expectations of the parties by *implying terms in the agreement*.'"[103] Thus, "to allege a breach of contract claim and a breach of implied covenant claim, the implied promise for the covenant must be separate from the breach of contract."[104]

---

[99] *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 45, 104 P.3d 1226.

[100] *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193.

[101] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991).

[102] *Terry v. Hinds*, 47 F. Supp. 3d 1265, 1274 (D. Utah 2014).

[103] *Id*. (emphasis in original) (quoting *A.I. Transp., Div. of Ins. Co. of State of Pa. v. Imperial Premium Fin., Inc.*, 862 F. Supp. 345 348–48 (D. Utah 1994)).

[104] *ClearOne, Inc. v. RSM US LLP*, No. 2:16-cv-00736-DN, 2017 WL 923949, at *4 (D. Utah Mar. 6, 2017).

In the instant matter, Mr. Andra has conflated the two causes of action by pleading that MobileOne breached the covenant by breaching the express terms of the Agreement. Mr. Andra alleges that MobileOne breached the covenant in four ways: (1) never providing Mr. Andra a written job description; (2) terminating Mr. Andra without cause; (3) failing and refusing to pay Mr. Andra the severance compensation contemplated in section 5.2 of the Agreement; and (4) terminating Mr. Andra for communicating his disapproval of MobileOne's approach to sexual harassment allegations against a managerial employee. The second, third, and fourth alleged breaches involve breaches of the express terms of the Agreement and were dealt with when the Court analyzed Mr. Andra's breach of contract claim. To reiterate, no reasonable jury could find that MobileOne breached the Agreement—Mr. Andra was appropriately terminated for cause. Thus, Mr. Andra's claim for breach of the covenant of good faith and fair dealing rests solely on the allegation that MobileOne breached the covenant by failing to provide Mr. Andra with a written job description so that he never knew what his duties were.

"To determine the legal duty a contractual party has under this covenant, a court will assess whether a 'party's actions [are] consistent with the agreed common purpose and the justified expectations of the other party.'"[105] The "purpose, intentions, and expectations" are determined "by considering the contract language and the course of dealings between and conduct of the parties."[106] The Court may then "imply or read terms into the agreement to protect" these reasonable expectations,[107] and "[b]reaching these implied terms gives rise to an

---

[105] *Oakwood Vill. LLC*, 2004 UT 101 at ¶ 43 (alterations in original) (quoting *St. Bendict's*, 911 P.2d at 200).

[106] *Id.* (citation modified).

[107] *Terry*, 47 F. Supp. 3d at 1274.

action for the breach of the implied covenant of good faith and fair dealing."[108] Here, there have

been no averments as to the parties' course of dealings or conduct prior to the signing of the

Agreement, so the Court will focus on the Agreement's language.

Mr. Andra's assertion that he was never provided a written job description is befuddling

because the Agreement clearly provides one. Section 2.1 of the Agreement states that "Employee

is hired as an Area Director, initially to oversee sales in Company stores located in Utah,

Montana, and Idaho, and Company may choose to also have Employee oversee its stores in

Colorado and other of Company's stores in other states as Company may direct. Company may

communicate additional specific job duties and expectations related to this position to

Employee."[109] Thus, it is unclear exactly what implied term Mr. Andra seeks the Court to read

into the Agreement. Perhaps Mr. Andra argues that MobileOne should have communicated

additional specific job duties and expectations to him in writing, but from the language of the

contract, there is no justified expectation for that. More broadly, Mr. Andra asserts that

MobileOne hid from him the specifics of his employment duties, but the contractual language

does not obligate MobileOne to communicate those specifics. Rather, MobileOne "*may*

communicate additional specific job duties," which is permissive rather than mandatory. The

covenant "cannot create rights and duties inconsistent with express contractual terms."[110]

Furthermore, even if the Court were to assume that some implied promise existed regarding

the communication of job duties, the undisputed record shows that MobileOne gave Mr. Andra

ample guidance in good faith as to how he could successfully perform his responsibilities. Mr.

---

[108] *Id.*

[109] ECF No. 96, Ex. C, at 1.

[110] *Oakwood Vill. LLC*, 2004 UT 101 at ¶ 45.

Andra asserts that the record reveals MobileOne hid from him the specifics of his employment duties and of the complaints against him, impairing his ability to perform his duties and to respond to the complaints. Notably, Mr. Andra does not point to any evidence supporting this, and indeed, he could not do so because it is a blatant misrepresentation of the record. In reality, the record shows that the Agreement provided a description of the scope of Mr. Andra's duties, including the expectation to generally oversee sales in the company as an Area Director.[111] Despite that Mr. Andra contends MobileOne did not cite specific policies Mr. Andra violated in the notice letters, the letters themselves contradict this. Each letter points to the sections in the Agreement at issue and provides clarifying information and objectives.[112] Moreover, after the First Notice, Mr. Andra had opportunity to meet and discuss the issues,[113] and Mr. Andra himself proposed the terms of the initial cure.[114] MobileOne also provided Mr. Andra with opportunity to meet weekly with his supervisor, Mr. Qualls, where he could discuss anything he wanted about his job.[115] After the Second Notice, MobileOne provided Mr. Andra with coaching meetings to help him in resolving his issues.[116] In sum, Mr. Andra's contention that MobileOne refused to tell him his job duties and how to fulfill them is unfounded. Therefore, no reasonable jury could find that MobileOne breached the covenant of good faith and fair dealing by failing to communicate to Mr. Andra his responsibilities. Summary judgment in favor of MobileOne is warranted on this claim.

---

[111] ECF No. 96, Ex. C, at 1.

[112] ECF No. 96, Exs. H, P, T.

[113] ECF No. 96, Ex. A 118:20–119:4; 123:4–23.

[114] ECF No. 96, Ex. I; ECF No. 96, Ex. J.

[115] ECF No. 96, Ex. G at 68:13–14.

[116] ECF No. 96, Ex. P.

**III.    MobileOne is entitled to summary judgment on Mr. Andra's fraudulent inducement claim because Mr. Andra has failed to proffer evidence proving each element of the claim by the requisite clear and convincing standard**

In Mr. Andra's Complaint, he alleges that MobileOne, through Mr. David Licavoli, made the misrepresentation that Mr. Andra could "continue to manage his stores as he saw fit and should feel free to express his opinions and compete against Mr. Guarine."[117] Mr. Andra also alleges that he was induced to rely and did rely on those representations.[118] MobileOne asserts that it is entitled to summary judgment on Mr. Andra's claim for fraud in the inducement because MobileOne did not make any misrepresentations to Mr. Andra and because Mr. Andra did not rely on any purported misrepresentations.

As a threshold matter, the evidence Mr. Andra offers in attempt to create genuine issues of material fact regarding this claim comes from Mr. Andra's declaration attached to his opposition. MobileOne challenges this declaration as being a sham affidavit because some of Mr. Andra's statements in that declaration conflict with statements made in Mr. Andra's deposition, as well as with other evidence. "[A]n affidavit may not be disregarded [solely] because it conflicts with the affiant's prior sworn statements."[119] Courts will, however, "disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue."[120] "[C]ases in which an affidavit raises but a sham issue" are "unusual."[121] To determine whether an affidavit creates but a sham issue, the Court weighs three factors: "(1) the affiant was

---

[117] ECF No. 2 ¶ 103. At the time relevant to this issue, Mr. Licavoli was MobileOne's CEO. ECF No. 96, Ex. C at 3.

[118] ECF No. 2 ¶ 105.

[119] *L. Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (alterations in original).

[120] *Id.*

[121] *Id.*

cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain."[122] If the affidavit creates sham issues of fact, the Court need not disregard the affidavit as a whole but may disregard only the portion that creates the sham issues.[123]

Because the test for a sham affidavit involves whether the earlier testimony was cross-examined, the Court will focus only on the contradictions between the declaration and Mr. Andra's deposition, as that is the evidence MobileOne points to that was testimonial and subject to cross-examination.

A great deal of the declaration consists of statements that do not bear on material facts and do not appear to directly contradict Mr. Andra's prior testimony. The statements relevant to this challenge are as follows: Mr. Andra testifies that he had significant conversations with his brother concerning the Agreement in which his brother told him that "MobileOne wanted to learn as much as it could about what had made The Mobile Source successful and incorporate those practices in MobileOne's own practices" and that Mr. David Licavoli was "looking forward to Mr. Andra's stores going 'head-to-head' against the MobileOne stores supervised by Nick Guarine to improve sales across the company."[124] Mr. Andra testifies that his brother said that Mr. Licavoli told him, "I hope Todd kicks Nick's ass."[125] Mr. Andra then goes on to testify

---

[122] *Id.*

[123] *See D.C. v. Hasratian*, 304 F. Supp. 3d 1132, 1147 (D. Utah 2016) ("The court, therefore, disregards the portion of D.C.'s affidavit in which he declares that Jennifer constructively fired him after he cooperated with the police investigation.").

[124] ECF No. 107, Ex. 2 ¶ 1.

[125] *Id.*

that he would not have signed the Agreement had he known he "would be allowed so little freedom to compete against Nick and 'kick his ass,'" or that he would not be allowed to run his stores as he saw fit—he had other options available to him that did not require him to join MobileOne.[126]

In deposition, Mr. Andra testified, "No. I was just getting paid," when asked if he asked his brother any questions about the Agreement or if he tried to negotiate it.[127] When asked if he wanted to negotiate conditions or guarantees into the Agreement about having certain authorities or abilities at MobileOne, Mr. Andra testified no.[128] When asked if he just took the Agreement that was presented to him by his brother and signed it, Mr. Andra testified yes.[129] Further, he testified that, "I was just under the understanding I had a three-year contract and that my compensation would be the same."[130] He also testified that he understood there was an opportunity for him to "maybe be running the whole thing" but that "[t]his was just talk."[131]

There is direct contradiction between Mr. Andra's declaration statement that he would not have signed the contract but for the purported misrepresentations and Mr. Andra's deposition testimony that he signed the contract under just the understanding that he had a three-year contract and that his compensation would remain the same. Thus, as the threshold requirement for triggering the sham affidavit inquiry has been met, the Court will now determine whether the affidavit attempts to create a sham issue. Though Mr. Andra's counsel was present at the

---

[126] *Id.* ¶ 3.

[127] ECF No. 96, Ex. A at 50:21–24.

[128] *Id.* at 50:25–51:3.

[129] *Id.* at 51:7–9.

[130] *Id.* at 51:11–13.

[131] *Id.* at 52:5–12.

deposition, Mr. Andra was not cross-examined. The first factor thus weighs against the finding

of a sham affidavit. The second and third factors, however, weigh in favor of such a finding. Mr.

Andra had access to this information at the time of the deposition, and the earlier testimony does

not reflect confusion nor does the affidavit attempt to explain a prior statement. Rather, as a

whole, it appears that this statement was offered to create a sham issue of fact regarding whether

Mr. Andra relied on and was induced to act by the alleged misrepresentations. Although sham

affidavits are generally unusual, the finding of such in this case is bolstered by Mr. Andra's

failure to offer any other evidence as to any elements of this claim. Therefore, the Court will

disregard paragraph three of Mr. Andra's declaration.

Turning to the claim itself, a plaintiff must establish the following elements to prevail on

a claim for fraud in the inducement:

> (1) that a representation was made (2) concerning a presently existing material fact (3)
> which was false and (4) which the representor either (a) knew to be false or (b) made
> recklessly, knowing that there was insufficient knowledge upon which to base such a
> representation, (5) for the purpose of inducing the other party to act upon it and (6) that
> the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon
> it (8) and was thereby induced to act (9) to that party's injury and damage.[132]

"Fraud claims must be proven by clear and convincing evidence."[133] Thus, "[i]n a fraud claim,

'[s]ummary judgment is warranted if a plaintiff fails to supply evidence, which, if accepted as

true, would clearly and convincingly support each element of'" the claim.[134]

Because Mr. Andra's declaration creates a sham issue of fact, there is no evidence that

Mr. Andra relied on the alleged misrepresentations. Thus, no reasonable jury could find such,

---

[132] *Keith v. Mountain Resorts Dev., L.L.C.*, 2014 UT 32, ¶ 41, 337 P.3d 213.

[133] *Andalex Res., Inc. v. Myers*, 871 P.2d 1041, 1046 (Utah Ct. App. 1994).

[134] *Fisher v. Davidhizar*, 2011 UT App 270, ¶ 15, 263 P.3d 440 (quoting *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 62, 201 P.3d 966).

and Mr. Andra cannot prevail on his claim for fraudulent inducement. Nonetheless, even were the Court to consider the declaration statements discussed above, Mr. Andra's claim would still fail because the claim is threadbare in terms of supporting evidence—and thus in merit.

MobileOne's argument that Mr. Andra cannot show MobileOne made any misrepresentations to Mr. Andra because the alleged misrepresentations were communicated to him through his brother is incorrect. Under Utah law, a fraudulent misrepresentation need not be made directly to the individual.[135] Instead, the question is whether the representation is false.[136] And even assuming Mr. Licavoli's statements qualify as representations concerning presently existing material facts, there is no evidence that these statements are false. MobileOne's not wanting Mr. Andra to send explicit messages about their executive team to his subordinates or to treat his subordinates with unnecessary aggression does not create a reasonable inference that Mr. Licavoli lied about MobileOne wanting to learn from The Mobile Source or about wanting Mr. Andra to drive sales competitively against Mr. Guarine. Moreover, there is, as MobileOne points out, no evidence that these statements were made with knowledge of falsity, that they were made with recklessness, or that they were made with the intent to induce Mr. Andra to enter the Agreement.

Furthermore, even were the Court to assume that these representations were false, made with the required intent, and reasonably relied upon, there is insufficient evidence that Mr. Andra's entering the Agreement was to his injury and damage. Mr. Andra states that he had other opportunities he could have taken instead of the job with MobileOne but presents no evidence about these opportunities or other damages. Mr. Andra's termination and failure to receive the

---

[135] *Russell/Packard Dev., Inc. v. Carson*, 2003 UT App 316, ¶ 29 n.12, 78 P.3d 616.

[136] *Id.*

severance he wanted were the result of his own actions and cannot be blamed on his signing the Agreement. Thus, Mr. Andra cannot meet the clear and convincing standard required to prove damages.

In sum, Mr. Andra attempts to survive summary judgment on this claim based almost entirely on conclusory statements unsupported by evidence. Without clear and convincing evidence as to each element of this claim, no reasonable jury could find that Mr. Andra was fraudulently induced. Therefore, summary judgment is warranted on this claim.

### IV. MobileOne is entitled to summary judgment on Mr. Andra's claim for wrongful termination in violation of public policy because the claim as alleged is not recognized under Utah law due to UADA preemption

MobileOne argues that Mr. Andra's claim for wrongful termination in violation of public policy fails as a matter of law because (1) the claim is barred by the economic loss rule and (2) the claim is preempted by the Utah Anti-Discrimination Act ("UADA").[137] Mr. Andra asserts that the economic loss rule is inapplicable and that the UADA does not bar his claim as, based off of his allegations, he would have no remedy under the UADA. The Court will address the economic loss rule and the preemption issue in turn.

---

[137] Mr. Andra is correct that preemption is an affirmative defense that should be pleaded and that MobileOne did not include this affirmative defense in its Amended Answer. ECF No. 41. Nonetheless, "[t]he substance of many unpleaded Rule 8(c) affirmative defenses may be asserted by pretrial motions, particularly in the absence of any showing of prejudice to the opposing party and assuming it has had an opportunity to respond." *Gardner v. U.S.*, 316 F. Supp. 3d 1308, 1315 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER FEDERAL PRACTICE AND PROCEDURE § 1278 (3d ed. 2004)). Here, Mr. Andra has had an opportunity to respond to the preemption argument. Moreover, because the question of whether the UADA preempts Mr. Andra's claim "rests on a broad view of the nature of th[e] claim[] rather than a detailed examination of the evidence supporting the claim[]," no additional discovery would affect the Court's determination. *Id.* at 1316. Therefore, Mr. Andra was not prejudiced by MobileOne's failure to raise this affirmative defense prior to the close of discovery, and the Court will permit MobileOne to raise its preemption argument in its motion for summary judgment.

"The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."[138] The doctrine "prevents recovery of economic damages under a theory of nonintentional tort when a contract covers the subject matter of the dispute" because "[u]nder such circumstances, the contract is the exclusive means of obtaining economic recovery."[139] Thus, in determining whether the economic loss rule bars a tort claim, "the 'initial inquiry' becomes 'whether a duty exists independent of any contractual obligations between the parties.'"[140] If an independent duty exists, "the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and . . . does not fall within the scope of the rule."[141]

MobileOne contends that Mr. Andra's wrongful termination in violation of public policy claim is barred by the economic loss rule because the Agreement governs the subject matter of the dispute—Mr. Andra's termination—and because the tort is only available to at-will employees. These arguments are unpersuasive. Utah law is clear that "all employers have a duty not to terminate any employee, 'whether the employee is at-will or protected by an express or implied employment contract,' in violation of a clear and substantial public policy."[142] This duty

---

[138] *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 18, 221 P.3d 234.

[139] *Reighard v. Yates*, 2012 UT 45, ¶ 20, 285 P.3d 1168.

[140] *Davencourt*, 2009 UT at ¶ 27 (quoting *Hermansen v. Tasulis*, 2002 UT 52, ¶ 17, 48 P.3d 235).

[141] *Id*. (citation modified).

[142] *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 404 (Utah 1998) (quoting *Retherford v. AT&T Comm'ns*, 844 P.2d 949, 960 (Utah 1992)).

exists independent of any contractual obligations, as it is imposed by law,[143] and it applies to all employment arrangements.[144] The economic loss rule does not, therefore, bar Mr. Andra's tort claim.

That the tort claim falls outside the bounds of the economic loss rule does not mean, however, that the claim is without fatal deficiencies—a cause of action for wrongful termination in violation of a public policy against sex discrimination does not exist under Utah law, as such a tort is preempted by the UADA.[145] In order to prevail on a wrongful termination in violation of public policy claim, a plaintiff must prove that "(1) h[is] employment was terminated; (2) a clear and substantial public policy existed; (3) the plaintiff's conduct implicated that clear and substantial public policy; and (4) the termination and conduct in furtherance of the public policy are causally connected."[146] The Utah Supreme Court "has indicated that it will narrowly construe the public policies on which a wrongful termination action may be based"[147] and, to that end, has identified only four categories of public policies that may provide such basis: "(i) refusing to commit an illegal or wrongful act . . .; (ii) performing a public obligation . . .; (iii) exercising a legal right or privilege . . .; or (iv) reporting to a public authority criminal activity of the employer."[148] Here, Mr. Andra attempts to base his claim on a public policy against sexual

---

[143] *See Peterson v. Browning*, 832 P.2d 1280, 1285 (Utah 1992) ("[T]he duty at issue in actions for wrongful termination in violation of public policy does not arise out of the employment contract. It is imposed by law . . .").

[144] *Ryan*, 972 P.2d at 404.

[145] *Byers v. Creative Corner, Inc.*, 2002 UT 96, ¶ 3, 57 P.3d 1064 ("[W]e have held that a cause of action for wrongful termination in violation of a public policy against sex discrimination does not exist in Utah.").

[146] *Rackley v. Fairview Care Ctrs.*, 2001 UT 32, ¶ 14, 23 P.3d 1022.

[147] *Peterson*, 832 P.2d at 1282.

[148] *Ryan*, 972 P.2d at 408 (citation modified).

harassment. But the Utah Supreme Court has "refused to recognize a common law cause of action for wrongful termination in violation of public policy against sex discrimination, holding instead that the [UADA] preempts all state common law remedies for discrimination" based on a protected characteristic.[149] Thus, due to the UADA's preemption, sexual harassment cannot support a claim for wrongful termination in violation of public policy.[150]

Mr. Andra argues that the UADA does not preempt his claim because he would have no remedy under the UADA. According to Mr. Andra, he does not allege that MobileOne terminated him in retaliation for engaging in protected conduct; rather, he was terminated for supporting MobileOne in how it dealt with a sexual harassment incident. This is a confused argument concocted, without any citation to evidentiary support, in attempt to avoid summary judgment, and it directly contradicts Mr. Andra's Complaint. In the Complaint, Mr. Andra alleges that he was terminated for communicating his disapproval of MobileOne's approach to sexual harassment allegations[151] and that MobileOne terminated him "to punish him for his protected activity."[152] Mr. Andra cannot claim retaliation when it suits him then repudiate retaliation when it does not. Nonetheless, whether or not the UADA would provide a remedy for Mr. Andra's claim is inconsequential. The case law is clear that the UADA's preemption applies even when the plaintiff could not seek recourse pursuant to the UADA.[153] Therefore, because Mr. Andra's claim is based

---

[149] *Byers*, 2002 UT 96 at ¶ 3 (citing *Gottling v. P.R. Inc.*, 2002 UT 95, 61 P.3d 989).

[150] *See Richards v. Wyndham Vacation Ownership, Inc.*, No. 2:17-cv-00978-TS, 2018 WL 354682, at *2 (D. Utah Jan. 10, 2018) (holding that due to UADA preemption, the plaintiff's allegation that he was terminated for complaining of sexual harassment could not support his claim for wrongful termination.).

[151] ECF No. 2 ¶ 100(d).

[152] ECF No. 2 ¶ 109.

[153] *See Gottling*, 2002 UT 95 at ¶ 20 "[S]tatutory schemes, in certain circumstances, may preclude formerly available common law causes of action, despite leaving some individuals without a remedy."); *Byers*, 2002 UT 96 at ¶ 3 (holding that plaintiff could not raise a claim for

on a public policy against sexual harassment and Utah law does not recognize such a claim as it is preempted by the UADA, MobileOne is entitled to judgment as a matter of law.

## V.    MobileOne is entitled to summary judgment on Mr. Andra's claim for unjust enrichment as the bonus at issue falls within the scope of the Agreement

Mr. Andra alleges as basis for his unjust enrichment claim that he earned a $4,000 bonus for leading his team to the highest weekly sales in each week of September 2022.[154] MobileOne contends that it is entitled to summary judgment on this claim because the Agreement governs the bonus at issue. Mr. Andra argues that the bonus falls outside the scope of the Agreement. Based on the language of the Agreement, the Court agrees with MobileOne.

An unjust enrichment claim has three elements: (1) "a benefit conferred on one person by another;" (2) appreciation or knowledge of the benefit by the conferee; and (3) "the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[155] "[B]ecause unjust enrichment is an equitable remedy, a party may not recover under unjust enrichment if there is a legal remedy available."[156] Thus, "a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue."[157]

---

wrongful termination in violation of a public policy against sex discrimination even though she had no remedy under the UADA).

[154] ECF No. 2 ¶¶ 119–121.

[155] *Desert Miriah, Inc. v. B&L Auto, Inc.*, 2000 UT 83, ¶ 13, 12 P.3d 580, *holding modified by State v. Levin*, 2006 UT 50, ¶ 13, 144 P.3d 1096.

[156] *Vander Veur v. Groove Ent. Techs.*, 2018 UT App 148, ¶ 39, 436 P.3d 109, *aff'd in part, rev'd in part on other grounds*, 2019 UT 64, ¶ 22, 452 P.3d 1174.

[157] *Ashby v. Ashby*, 2010 UT 7, ¶ 14, 227 P.3d 246.

Here, a contract exists in the form of the Agreement, and neither party has suggested that the Agreement is unenforceable. Rather, the parties dispute whether the Agreement governs the bonus at issue. The initial question for the Court is thus one of contractual interpretation. When interpreting a contract, Utah courts "first look at the plain language [of the contract] to determine the parties' meaning and intent."[158] "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[159] If a contractual term is ambiguous, the Court may "consider extrinsic evidence to resolve the ambiguity."[160]

The relevant provision in the Agreement reads: "To the extent Company chooses to offer Employee any bonus, the same will be at Company's discretion."[161] MobileOne asserts that the breadth of the phrase "any bonus" encompasses any bonus Mr. Andra earned. Mr. Andra, on the other hand, claims that the bonus he earned was a company-wide bonus and was thus not governed by the Agreement. Nothing in the plain language of the Agreement, however, suggests that the parties intended the phrase "any bonus" to not include company-wide bonuses. Rather, "any bonus" is unambiguous and encompasses any bonus, including a company-wide bonus, Mr. Andra earned. Even if "any bonus" were ambiguous and the Court were allowed to consider extrinsic evidence, Mr. Andra has failed to proffer any evidence that the parties ever intended this language to exclude company-wide bonuses. As such, the bonus at issue falls within the

---

[158] *Brady v. Park*, 2019 UT 16, ¶ 53, 445 P.3d 395 (modification in original).

[159] *Id.*

[160] *Id.* ¶ 29.

[161] ECF No. 96, Ex. C at 1.

scope of the Agreement, and Mr. Andra may not recover under the equitable remedy of unjust enrichment.[162] MobileOne is thus entitled to summary judgment on this claim.

### **ORDER**

Based on the foregoing, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 96). Judgment will be entered in favor of Defendant and against Plaintiff.

DATED this 29th day of September 2025.    BY THE COURT:

Ann Marie McIff Allen
United States District Judge

---

[162] Mr. Andra presents some argument that because he earned the bonus, MobileOne did not have the discretion to refuse to pay it. But because the Agreement governs Mr. Andra's bonuses, recourse would need to be sought through a contractual remedy.